Stanley L. Lehn, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 9, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Paul R. Ober,* with him *Edelman, Saylor, Readinger & Poore,* for petitioner.

*Bernadette A. Duncan,* Assistant Attorney General, with her *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., July 3, 1978:

This is an appeal from an order of the Unemployment Compensation Board of Review (Board), which affirmed, after remand, a referee's denial of benefits on the ground that petitioner (claimant) voluntarily terminated his employment "without cause of a necessitous and compelling nature," pursuant to Section 402 (b)(1) of the Unemployment Compensation Law

(Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1). Claimant contends before this Court that the termination was justified because the job offered by his employer upon his being removed from his former job was so radically different both in the compensation offered and skill required as to be unsuitable work within the meaning of Section 4(t) of the Law, 43 P.S. §753(t). The Board argues that because these issues were not raised below they cannot be considered here. We agree and accordingly affirm the denial of benefits.

Claimant had been a computer operator for over 24 years. His last employment, as a master scheduler/computer operator, began in July 1973. After his employer, a bank, installed a new computer system in or about March 1975, claimant and two other operators, each approximately 30 years younger than claimant and subordinate to him in both job position and computer experience, took a training course in its operation. During this period claimant (in his own words) "brought the computer up" to an operational stage. The capabilities of the new system enabled the employer to decrease the number of operators from three to two and, in September 1975, after examining scores from the training course, claimant's superiors concluded that, despite his experience, he was the least able of the three to operate the new computer. Claimant was informed of the decision and was offered a job as a counter and sorter of money in the cash room, an area in the basement of the bank, on the same level as the area in which armored trucks and other vehicles make deliveries and pickups throughout the day. His pay in the proffered job would have been $112 weekly, a reduction of $34 per week from his previous pay as a master scheduler/computer operator. Claimant refused the job in the cash room,

saying that he feared exhaust fumes from the trucks would affect his bronchial asthma, a condition from which he has suffered since 1963.

At a referee's hearing claimant was twice asked whether reasons other than his asthma caused him to reject the proffered job, to which he answered unequivocally each time, "No." In addition, claimant was asked specifically whether the reduction in pay was part of his reason for not continuing. He replied, "No, it was the asthma totally. . . ." He stated that he had "very seldom" been inside the cash room but did not attempt working there because "even upstairs" there had been problems with fumes. A representative of the employer testified, however, that the cash room is a climatically self-contained unit with air-conditioning, heating and filtered-air systems totally separate from the systems throughout the rest of the building. He testified further that the cash room is separated from the delivery areas by a long hallway and two sets of security doors. The referee found that the proffered job would have had no adverse effect on claimant's health and denied benefits. The Board remanded for additional testimony.

At the second hearing, at which he was represented by counsel, claimant offered into evidence certifications from several physicians attesting to the adverse effect of dust, smoke or fumes on his asthma. He testified that he had been inside the cash room twice and both times noticed exhaust fumes. Claimant's immediate supervisor testified that the cash room is approximately 150 feet from the delivery area and not only has the double security doors and air-conditioning, temperature and humidity controls, but an alarm system triggered by fumes. He said employees are not permitted to smoke within the cash room. The bank's vice-president and personnel manager testified that all deliveries are made outside the building and

the money and other materials are hand-trucked into the cash room. He said that only one small delivery truck ever enters the building itself and remains approximately 15 minutes, during which time federal health and safety regulations forbid the running of its motor. Neither claimant nor his counsel raised any reason before the referee or the Board other than the asthma for claimant's refusal to take the job in cash room.

The Board found that the cash room was free from dust, fumes and other foreign matter. It concluded that claimant had not shown necessitous and compelling cause for terminating his employment. This appeal followed.

There can be no question that substantial evidence exists to support the findings of the Board as to the conditions of the cash room vis-a-vis claimant's asthma. Claimant's counsel before this Court (an individual different from claimant's counsel below) contends vigorously, however, that the Board erred in denying benefits, and he cites us to numerous cases in which refusals to accept jobs because of substantial differences in the skill required or compensation offered did not preclude the payment of benefits. We admit that had it been contended below that such considerations prompted claimant's refusal to accept the job in the cash room, this would be a close case indeed. However, as the record shows, these allegations were never made. Claimant maintained in pre-hearing interview forms and throughout both hearings (even in response to specific questions) that his only reason for refusing the job was because he feared his asthma would be affected. We, therefore, cannot consider the arguments advocated by counsel, raised for the first time in the petition for review before this Court.

Accordingly, we will enter the following

## ORDER

Now, July 3, 1978, the order of the Unemployment Compensation Board of Review, at Decision No. B-140105, dated January 25, 1977, is hereby affirmed.